UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| LEE AMBROSE, Trustee for the next of kin of Neil Ambrose, and Personal Representative of the Estate of Neil Andrew Ambrose, | ) ) ) ) | CIV. 04-4068-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING |
| vs. | ) | DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| MAJOR DARREN YOUNG, MARK W. TISLAND, and DOUGLAS WEBER, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Lee Ambrose, sued defendants, Major Darren Young, Mark W.

Tisland, and Douglas Weber (hereinafter collectively referred to as defendants),

pursuant to 42 U.S.C. § 1983 claiming that defendants violated the

constitutional rights of his deceased son, Neil Ambrose (hereinafter Neil).

Specifically, plaintiff claims in his complaint that (1) defendants Young and

Tisland violated Neil's Eighth Amendment right to be free from cruel and

unusual punishment when defendants failed to protect him from being

electrocuted by a downed power line while on a prison work detail; and

(2) defendant Weber made policy decisions that required Neil to work under

dangerous conditions without providing sufficient training and safety

procedures for the work crew supervisors.  Defendants move for summary

judgment and assert qualified immunity.  Defendants' motion for summary

judgment is denied.

## BACKGROUND

The evidence viewed in the light most favorable to the nonmoving party,

plaintiff, is:

On July 31, 2002, Neil was electrocuted while on an inmate work detail.

At the time, Neil was an inmate in the custody of the South Dakota

Department of Corrections (DOC).  Young was one of two DOC "Majors," which

was the second highest ranking uniformed position at the DOC.  (Young Dep.

at 5).  Young was the team commander for the Emergency Response Team

(ERT) that was sent to assist in storm clean up in July of 2002.  DSUMF ¶ 22.

Tisland was employed by the DOC as an inmate roofing crew supervisor, and

he was the supervisor of the storm cleanup crew on July 31, 2002, of which

Neil was a member.  DSUMF ¶ 25, 29.  Defendant Weber is the DOC

Supervising Warden.

The South Dakota ERT program involves several state agencies,

including the DOC and its inmate work crews.  It provides storm cleanup and

disaster relief to South Dakota communities.  As part of this disaster relief,

inmates would typically clear downed trees or pick up other debris left behind

after a storm.  Inmates participating in the work program usually had their

sentences reduced.   DSUMF ¶ 42.

2

In July of 2002, Governor Janklow activated the ERT program to clean up after a storm that struck Sinai, South Dakota.  Neil and several other inmates were part of the work crew.  Tisland owns a farm near Sinai.  Tisland brought a crew of approximately 10 inmates to his farm around noon on July 31, 2002.  DOC Officer Darin Ewer brought another crew of 12 DOC inmates to Tisland's farm.  PSMF ¶¶ 78, 79.  The inmates were assigned to saw and remove branches and debris from the Tisland property.   The inmates and Ewer state that they were also assigned to do "beautification" work.  PSMF ¶ 80.  While Neil's crew was working on the Tisland farm, a Department of Transportation dump truck struck a power line.  The line snapped and dropped towards the ground, sparking a small grass fire.  PSMF ¶ 86.

Several inmates ran towards the fire when they heard the power line break.  PSMF ¶ 87.  Officer Ewer told the inmates to stay away.  The inmates stopped about 10-20 yards away from the fire and were "creeping" up.  PSMF ¶ 87. Officer Ewer told the inmates who were approaching the power line, which was hanging down at chest level and had started a fire directly beneath it, to stay away.  They obeyed and stopped.  PSMF ¶ 88.   Young ran toward the inmates and shouted for them to be safe.  He asked them where the power line was.  DSUMF ¶ 100.   The inmates moved to within 6 to 10 yards of the fire.  Id.  Young  asked, "Do you think we can stomp it out?"  Def. Ex. 29 (Docket 41-12), Young Dep. at 60.  Ewer reported, "I will say when the question to put the fire out was asked, the guys and I moved in without

3

hesitation." Def. Ex. 29 (Docket 41-12).  Young told the inmates to stomp at the edge of the fire, which was about an arm's length or 3 feet from the power line.  PSMF ¶ 104.  Young's comment was taken as a command by the inmates.  Id.  Young states that he was standing with the inmates within 3 feet of the wire, DSUMF ¶ 105, but the inmates and Tisland dispute this fact and state that Young stayed back.  PSMF ¶ 97.

Tisland testified that he did not run towards the fire, but stayed near the road and told his wife to call the electric company while he dialed 911 to report the fire.  PSMF ¶ 93.  The first entry in the 911 records, however, reflects a call reporting that an inmate was on fire.  Def. Ex. A (Docket 41-2).

When the fire was subdued and to the smoldering stage, Young told the inmates to move away from the power line, and they began to back up. DSUMF ¶ 121.  Young then heard a loud noise and yelling.  When he turned, he saw the power line was touching Neil's chest.  DSUMF ¶123.  Neil shook violently as the line stuck to his chest for 15-20 seconds, then slipped up to his neck for another 15-20 seconds.  Flames and sparks shot out from his neck and rib cage.  The power line broke, and Neil fell dead to the ground. Def. Ex. 29.  Immediately after the power line touched Neil, Young, Ewer, and Tisland shouted at the inmates to get away from the power line and from Neil. DSUMF ¶ 124.

On May 11, 2004, plaintiff filed a complaint alleging that Young, Tisland, and Weber violated 42 U.S.C. § 1983 by depriving Neil Ambrose of his

4

Eighth Amendment right to be free from the infliction of cruel and unusual punishment.  Plaintiff is seeking damages that the decedent Neil could have recovered if he had survived the electric shock, damages for burial expenses, loss of companionship, prejudgment interest and costs, and punitive damages. Plaintiff is also seeking damages for pain and suffering under SDCL 21-5-2 and wrongful death under SDCL 21-5-1.  <u>See</u> Compl. at 5.

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Id.</u>

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The

nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  <u>Vette Co. v. Aetna Cas. & Sur. Co.</u>, 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists.  <u>Forrest v. Kraft Foods, Inc.</u>, 285 F.3d 688, 691 (8th Cir. 2002).

The doctrine of qualified immunity "shields government officials from suit unless their conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."  <u>Burnham v. Ianni</u>, 119 F.3d 668, 673 (8th Cir. 1997) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)); <u>Yowell v. Combs</u>, 89 F.3d 542, 544 (8th Cir. 1996).  When a qualified immunity defense is raised during summary judgment, "the official's conduct must be viewed through the prism of Rule 56–that is, [the court] must take as true those facts asserted by plaintiff[s] that are properly supported in the record."  <u>Id.</u> (citations omitted).  Therefore, "'if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment.'"  <u>Gregoire v. Class</u>, 236 F.3d 413, 417 (8th Cir. 2000) (quoting <u>Lambert v. City of Dumas</u>, 187 F.3d 931, 935 (8th Cir. 1999)).  "'Predicate facts' include only the relevant circumstances and the acts of the parties themselves, and not the conclusions of others about the reasonableness of those actions."  <u>Pace v. City of Des Moines</u>, 201 F.3d 1050, 1056 (8th Cir. 2000) (internal citation omitted)).  After

6

predicate facts are established, "the reasonableness of the official's conduct under the circumstances is a question of law." Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001). See also Pace, 201 F.3d at 1056 ("We restate for emphasis that whether an officer 'acted reasonably under settled law in the circumstances' . . . is a question of law, and not itself a predicate fact.").

## DISCUSSION

Plaintiff claims that (1) defendants Young and Tisland violated his Eighth Amendment right to be free of cruel and unusual punishment and (2) defendant Weber failed to adequately train defendants Young and Tisland. Defendants deny liability and raise the defense of qualified immunity.

When the defense of qualified immunity is raised on a motion for summary judgment, the first question must be whether the facts, taken in the light most favorable to the plaintiff, show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). If so, then the court must consider whether the right was clearly established in the specific context of the case. Id. If either question is answered in the negative, the public official is entitled to qualified immunity. Vaughn v. Ruoff, 253 F.3d 1124, 1128 (8th Cir. 2001). If both questions are answered in the affirmative, a public official can avoid a denial of qualified immunity only if he meets his burden of establishing undisputed and material predicate facts which demonstrates that his actions were

reasonable under the circumstances.  <u>Pace</u>, 201 F.3d at 1056.  If a genuine dispute over material predicate facts exists, a public official cannot obtain summary judgment.  <u>Id.</u>

## I.    Does Defendants' Conduct Violate a Constitutional Right?

Plaintiff contends that defendants Young and Tisland violated Neil's Eighth Amendment right to be free from cruel and unusual punishment when he was compelled to work on a prison work assignment that was dangerous to his life or health because the work included stomping out a grass fire within 3 feet of a live power line.  "Prison work assignments are conditions of confinement subject to scrutiny under the Eighth Amendment."  <u>Choate v. Lockhart</u>, 7 F.3d 1370, 1373 (8th Cir. 1993).

A prison official may be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement if he or she knows of and disregards an excessive risk to inmate health or safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u>

To succeed on an Eighth Amendment claim, "an inmate must prove both an objective element, which asks whether the deprivation was sufficiently serious, and a subjective element, which asks whether the defendant officials

acted with a sufficiently culpable state of mind." <u>Choate</u>, 7 F.3d at 1373.  The state of mind giving rise to liability in a case challenging prison conditions is deliberate indifference.  <u>Id</u>. at 1373-74; <u>Warren v. Missouri</u>, 995 F.2d 130, 131 (8th Cir. 1993).

Deliberate indifference, in the work assignment context, is shown when prison officials  "knowingly . . . compel convicts to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful[.]" <u>Ray v. Mabry</u>, 556 F.2d 881, 882 (8th Cir. 1977).  <u>See also  Sanchez v. Taggart</u>, 144 F.3d 1154, 1157 (8th Cir. 1998). Regardless whether defendants believed an inmate would be harmed, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  <u>Farmer v. Brennan</u>, 511 U.S. at 842, 114 S. Ct. at 1981.  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  <u>Id</u>. (citations and parenthetical omitted).

**A.  Young**

Defendants do not dispute that working near a live electrical line presents an objectively serious risk to inmate safety; rather, defendants focus their defense on the subjective prong.  With regard to the subjective prong, the

9

record contains evidence that Young knowingly compelled Neil to do work that Young knew was dangerous to Neil's life and health.  See, e.g., Def. Ex. 29 (Docket 41-12), PSMF ¶ 104.  Young assumed that the power line was still electrified and told the inmates to stay away from the line at first because he knew that touching it could be deadly.  Young Dep. at 59.  Young either told the inmates to stomp the edge of the fire without going further than the edge of the fire or asked whether they could put the fire out.  Young Dep. at 60-61; Ex. R: Schleppenbach statement; Freidel statement; Perez statement.  Young testified that he wanted the fire extinguished when he made this statement.  Young Dep. at 60-61.  Inmates who are told to do something by a DOC official are required to obey the directives or they could be disciplined.  Tisland Dep. at 29; Young Dep. at 34.  As they stomped the fire out, the inmates moved to within an arm's length, which was approximately 3 feet, from the downed power line.  Young Dep. at 60-61.

While Young disputes that he ordered the inmates near the wire, the surviving inmates state that Young told them to stomp the edges of the fire around the dangling power line.  See Ex. R:  Freidel statement.  Young's statement even prompted Officer Ewer to join the inmates in stomping out the edges of the fire.  Ex. R: Ewer Statement.  Furthermore, the risk presented by the dangling live power line was obvious and "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was

10

obvious." <u>Farmer</u>, 511 U.S. at 842. <u>See</u> <u>also</u> <u>Hall v. Bennett</u>, 379 F.3d 462, 464 (7th Cir. 2004) (jury may infer knowledge on part of defendants from obviousness of the risk that inmate could be electrocuted as a consequence of working on live circuit of elevated voltage without protective gloves).

Additionally, if the jury believes plaintiff's version of the disputed facts, the jury could infer that Young knew the risk associated with being 3 feet from the live power line because Young himself stayed back from the power line while talking on his cell phone and he did not join the inmates in the front at the fire line.  See Tisland Dep. at 41, 61; Freidel affidavit.  Viewing the evidence in the light most favorable to plaintiff, there is sufficient evidence that a jury could find that Young knew that Neil faced a substantial risk of serious harm from the live power line and that he failed to take reasonable actions to prevent Neil from approaching the power line, thereby subjecting Neil to risk his life despite Young's knowledge of a substantial risk of serious harm.  Because plaintiff has produced evidence that Young knowingly compelled Neil to do work that was dangerous to his life and health, the court finds that plaintiff's facts, if true, are sufficient to show that Young's conduct violated Neil's Eighth Amendment rights.

### B.  Tisland

Again there is no dispute that the objective element is met regarding Tisland.  With regard to the subjective prong,  Tisland was in charge of the

crew of which Neil was a member.  Tisland heard his wife say there was a fire and then he saw three members of his crew take off towards the fire.  Tisland Dep. at 39.  Tisland saw the Department of Transportation dump truck pull the Sioux Valley Electric line down, which caused the electric line to hit the grass, start a fire, and then bounce back up.  Tisland Written Statement, Attach. 3 to Ex. 34.   Tisland knew the power line was live and he thought it was dangerous.  Tisland Dep. at 44.  Tisland claims he immediately called 911 and had his wife call Sioux Valley Electric.  Tisland Dep. at 39.  Tisland's assertion that he called 911 before Neil was electrocuted is contradicted by the 911 call record that reflects a call reporting an "inmate on fire."  Def. Ex. A, Docket 41-2.

Tisland did not tell his crew to stop or to stay away from the power line. He was approximately 70 feet away from Neil when Neil was electrocuted. Tisland Dep. at 35.  After Neil was electrocuted, Tisland moved as close as he dared to the power line, which was about 10 feet away.  Tisland Dep. at 46.

In Farmer, the Supreme Court concluded that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.  Similarly, in Buckner v. Hollins, 983 F.2d 119, 123 (8th Cir. 1993), the Eighth Circuit Court of Appeals found that a prison

12

guard was deliberately indifferent to an inmate's safety when he stood by and watched while another guard beat a naked, handcuffed inmate.  Id. at 122-23. Tisland stood about 70 feet from the power line, while the crew of inmates that he supervised moved toward the power line.  Although Tisland did not order the inmates to move towards the power line, he also did not order them to stay away from the power line despite his knowledge of a substantial risk of serious harm to the inmates.  Tisland's claim that he took reasonable action by calling 911 is contradicted by the 911 call record that indicates the call was placed after Neil was electrocuted.  Viewing the evidence in the light most favorable to plaintiff, there is sufficient evidence that a jury could find that Tisland knew that Neil faced a substantial risk of serious harm from the live power line and that Tisland failed to take reasonable measures to abate that risk.  Thus, if the facts are true as alleged by plaintiff, the facts are sufficient to show that Tisland's conduct violated Neil's Eighth Amendment rights.

### C.  Warden Weber

Plaintiff contends that Weber violated the Eighth Amendment by failing to train Young and Tisland to deal with foreseeable risks involved in cleaning up after a natural disaster.  Weber was the supervising warden for the DOC. While a supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate under a respondeat superior theory, a supervisor is liable if he or she directly participates in the constitutional violation or if he or

she fails to properly supervise and train an employee which causes the deprivation of a constitutional right. <u>Tlamka v. Serrell</u>, 244 F.3d 628, 635 (8th Cir. 2001). "The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." <u>Id.</u> (quoting <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1078 (8th Cir. 1996) (citations omitted). "[N]otice of a pattern of unconstitutional behavior need not be shown where the failure to train employees 'is so likely to result in a violation of constitutional rights that the need for training is patently obvious.'" <u>Larson v. Miller</u>, 76 F.3d 1446, 1454 (8th Cir. 1996).

In this case, Weber authorized prisoners to participate in storm cleanup crews. He was aware that storm cleanup crews had previously encountered downed power lines. Weber Dep. at 46. Weber admitted that there was no specific training for work crew team leaders regarding actions to take to protect prisoners from the danger of downed power lines, and that he had never discussed the issue with Young or Tisland before Neil was electrocuted. <u>Id.</u> at 45-47. Weber testified that he generally expected Young and other employees to keep inmates away from downed power lines and other dangerous situations. <u>Id.</u> at 47, 56. Weber had seen Young and representatives of the governor's office give safety briefings to inmates, but had

14

not heard them instruct inmates about the specific dangers of power lines.  Id. at 139-40.  Weber also admitted that asking an inmate to stand within an arm's length of a live electric line would violate the Eighth Amendment.  Id. at 135.

Weber testified that he assumed inmates were given safety briefings that would cover potential job hazards.  Weber Dep. at 139.  While there had never been a serious injury or fatality on an inmate storm cleanup crew before Neil was electrocuted, the record indicates that inmates had previously suffered minor injuries such as heat exhaustion, dehydration, cuts, and insect bites. See Pl. Ex. K at 42, 98, 100, 102.  While the representative of the governor's office claimed he conducted a daily briefing on July 31, 2002, and discussed power line safety, Tisland and Ewer both denied that they had received any training regarding working around a power line.  Tisland Dep. at 28-29; Ewer Dep. at 41.  Tisland also denied receiving any training regarding responding to a fire while at a cleanup site.  Tisland Dep. at 29.

Viewing the evidence in the light most favorable to plaintiff, there is sufficient evidence for a jury to find that Warden Weber was aware that storm cleanup crews had encountered downed power lines previously, that there were obvious risks to inmate safety from downed power lines, and that a question of material predicate fact exists as to whether Tisland and Young were trained on how to respond to live downed power lines at a cleanup site.

15

Thus, a reasonable jury could find that the Weber's lack of training of Young and Tisland amounted to deliberate indifference to a substantial risk of serious harm to the inmates.  See Farmer, 511 U.S. at 842.

## II.    Was the Right Clearly Established?

If a § 1983 plaintiff has asserted the violation of a constitutional or statutory right, he must also demonstrate that the alleged right is clearly established in order to survive summary judgment.  Omni Behavioral Health v. Miller, 285 F.3d 646, 651 (8th Cir. 2002).  The Eighth Circuit Court of Appeals has taken a broad view of what qualifies as "clearly established law" for the purposes of a qualified immunity analysis.  Hayes v. Long, 72 F.3d 70, 73 (8th Cir. 1995).  "In order to determine whether a right is clearly established, it is not necessary that the Supreme Court has directly addressed the issue, nor does the precise action or omission in question need to have been held unlawful."  Id.  In order for a right to be clearly established, its contours "must be sufficiently clear that a reasonable person would understand that what he [or she] is doing violates that right."  Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).

### A.  Young and Tisland

The Eighth Circuit Court of Appeals has recognized that "the Eighth Amendment's prohibition against cruel and unusual punishment forbids knowingly compelling an inmate to perform labor that is beyond the inmate's

16

strength, dangerous to his or her life or health, or unduly painful" since at least 1990.  Sanchez v. Taggart, 144 F.3d 1154, 1156 (8th Cir. 1998) (citing Madewell v. Roberts, 909 F.2d 1203, 1207 (8th Cir. 1990)).  Thus, Neil's Eighth Amendment right was clearly established in 2002, when Neil was electrocuted.

### B.  Weber

The Eighth Circuit Court of Appeals has recognized a supervisor's duty to train subordinates to prevent the deprivation of a constitutional right since at least 1996.  See Tiamka v. Serrell, 244 F.3d 628 (8th Cir. 2001); Andrews v. Fowler, 98 F.3d 1069 (8th Cir. 1996).  Thus, Neil's Eighth Amendment claim against Weber based on his failure to train Young and Tisland to prevent the deprivation of his constitutional rights was clearly established in 2002, when Neil was electrocuted.

### III.  Reasonable Actions

Because both tests have been answered in the affirmative, defendants can avoid the denial of qualified immunity only if they have established undisputed and material predicate facts demonstrating that their actions were reasonable under the circumstances.  Pace, 201 F.3d at 1056.  In this case, however, "there is a genuine dispute concerning predicate facts material to the qualified immunity issue, [consequently] there can be no summary judgment."  Greiner v. City of Champlin, 27 F.3d 1346, 1352 (8th Cir. 1994).  As referenced previously, the evidence in this case presents material issues of fact on which

the issue of qualified immunity turns and "presents a sufficient disagreement to require submission to a jury." <u>Ludwig v. Anderson</u>, 54 F.3d 465, 474 (8th Cir. 1995) (citing <u>Anderson</u>, 477 U.S. at 251-52).

**IV.   Alternative Standard**

Defendants allege that the deliberate indifference standard applicable to Eighth Amendment claims does not apply to this case because of the exigent circumstances of the grass fire.  Rather, defendants contend that the applicable standard is whether force was applied "'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm'" as recognized in <u>Whitley v. Albers</u>, 475 U.S. 312, 320-321, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251 (1986) (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2<sup>d</sup> Cir. 1973)).  Defendants concede, however, that they are not aware of any court applying the higher <u>Whitley</u> standard to a prison conditions case.  In fact, the United States Supreme Court recognized in <u>Farmer</u> that "the very high state of mind prescribed by <u>Whitley</u> does not apply to prison conditions cases." <u>Farmer v. Brennan</u>, 511 U.S. 825, 836, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

In <u>Whitley</u>, prison guards were responding to a prison riot.  In this context, the Supreme Court found that only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment under the Eighth Amendment.  <u>Whitley</u>, 475 U.S. at 322, 106 S. Ct. at 1085.  The court

18

recognized that during a prison riot, prison administrators must take into account the competing obligations of ensuring the safety of the prison staff, administrative personnel, and visitors as well as the safety of the inmates themselves.  Id. at 320.  "In this setting, a deliberate indifference standard does not adequately capture the importance of such competing obligations, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance."  Id.

In the alternative, defendants contend that the shock the conscience standard set forth in County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998), for alleged substantive due process violations applies because Young and Tisland had to make sudden, difficult decisions after the fire started.  Defendants concede again, however, that this standard has not been applied by any court to an Eighth Amendment prison conditions case.

Lewis involved a high speed automobile chase by law enforcement officers pursuing a suspect wherein plaintiff alleged that his substantive due process rights were infringed.  To establish a substantive due process violation, the Supreme Court found that a plaintiff must show that the behavior of the law enforcement officer was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Lewis, 523 U.S.

19

at 847 n.8, 118 S. Ct. 1708.  In adopting the intent-to-harm standard, the
Supreme Court recognized that a police officer's decision to pursue a fleeing
suspect balanced "on one hand the need to stop a suspect and show that
flight from the law is no way to freedom, and, on the other, the high-speed
threat to all those within stopping range, be they suspects, their passenger,
other drivers, or bystanders." Id. at 853, 118 S. Ct. 1708.  The Lewis rationale
was recently applied by the Eighth Circuit Court of Appeals to a case involving
a police officer who broadsided a third party's vehicle while responding to a
domestic disturbance call.  See Terrell v. Larson, 396 F.3d 975, 979 (8th Cir.
2005).

     Under both Lewis and Whitley, the law enforcement officer was faced
with competing interests in a "rapidly evolving, fluid, and dangerous
situation."  Neal v. St. Louis County Bd. of Police Comm'rs, 217 F.3d 955, 958
(8th Cir. 2000).  Here, if there are competing interests, those interests are the
potential danger to Neil's life by compelling him to approach within 3 feet of
downed power line versus minimal property damage from a grass fire.  While
Young and Tisland had an Eighth Amendment obligation not to compel Neil to
do a work assignment that would be dangerous to his life or health, they had
no legal obligation to put out the fire at Tisland's farm.  All witnesses agreed
that the grass fire was small and that it posed no danger to structures.  Young
Dep. at 70; Tisland Dep. at 35, 44.  Tisland testified that if the inmates had

not stomped the fire out, it would not have spread because the ground was wet.  Tisland Dep. at 35.  Furthermore, defendants made the decision to assign inmates to do storm clean-up in a calm, deliberate environment, knowing that the inmates may confront downed power lines or other hazards during those work assignments.  Unlike the rapidly evolving situation of a prison riot or a high-speed chase, defendants here had time to reflect and consider potential risks prior to making the work assignments.  Thus, the intent to harm test and the malicious and sadistic test are not applicable to these facts and the proper test is the deliberate indifference standard.

Plaintiff contends that he has pleaded a substantive due process violation and that he can meet this standard.  In Lewis, the Supreme Court noted that when a particular "Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  Id. at 842.  Because this case involves an alleged Eighth Amendment violation, the court will apply relevant Eighth Amendment case law, rather than the intent to harm standard found in the Lewis line of cases.

## V.  Damages

Lee Ambrose, as trustee for the next of kin of Neil Ambrose, and personal representative of the Estate of Neil Ambrose, seeks damages which

21

could have been recovered if Neil Ambrose had survived the electrocution (including the pain and suffering he felt before his death), burial costs, compensatory damages for loss of companionship, punitive damages, and prejudgment interests and costs.  Defendants move for summary judgment on the issue of damages, contending that there is no evidence that would support an award of compensatory damages, no expert evidence of pain and suffering, no evidence to support damages for lost future wages, and no evidence that Ambrose was close enough to his family to support an award for lost companionship.

In a § 1983 action, both compensatory and punitive damages are available upon proper proof.  Coleman v. Rahija, 114 F.3d 778, 787 (8th Cir. 1997).  In Andrews v. Neer, 253 F.3d 1052, 1063 (8th Cir. 2001), the court held that in a § 1983 death case, the proper remedy includes compensatory damages such as medical and burial expenses, pain and suffering before death, loss of earnings based on the probable duration of the victim's life, loss of consortium, and other damages recognized in common-law tort actions.  Id. (citing Berry v. City of Muskogee, Okla., 900 F.2d 1489, 1506-07 (10th Cir. 1990)).

Defendants contend that they are entitled to summary judgment on the pain and suffering claim because Neil was killed instantly and there is no evidence that he consciously experienced pain and suffering.  Defendants rely

22

on Butler v. Dowd, 979 F.2d 661, 671 (8th Cir. 1992) for their argument that as a matter of law, Ambrose must support the pain and suffering claim with expert testimony.  In Butler, the court cited the lack of expert medical testimony as one of several factors that may have led the jury to limit its award to nominal damages.  See id. at 671-73.  While it is true that a pain and suffering claim must be supported by evidence that the decedent was conscious and actually felt pain before his or her death, this may be shown by lay testimony.  See Dillingham v. IBP, Inc., 219 F.3d 797, 800 (8th Cir. 2000). See also 24 Am. Jur. 3d Proof of Facts § 337 (testimony of medical expert not necessarily required to establish conscious pain and suffering, but is invaluable in assisting jury).  In this case, Ewer reported that when Neil was shocked, he shook violently, his muscles constricted, fluid leaked out of his mouth, and flames shot out the side of his neck.  Ewer Dep. at 67-68 (Def. Ex. 29).  Viewing the evidence in the light most favorable to Ambrose, the court finds that there are genuine issues of material fact as to whether Neil suffered pain before he died.

Defendants contend that in the absence of compensatory damages, they are entitled to summary judgment on the punitive damages claim.  Punitive damages are appropriate in a § 1983 claim when the defendant's conduct involves "reckless or callous indifference to the federally protected rights of others."  Coleman, 114 F.3d at 787.  In light of the court's finding that there

23

are genuine issues of material fact regarding the compensatory damages claim and the underlying deliberate indifference to Eighth Amendment rights claim, summary judgment on the punitive damages issue is denied.

Defendants seek summary judgment on the lost wages claim because Neil only had a tenth grade education and limited job skills. The record indicates that he had obtained his GED and his father testified that he had worked as a landscaper. Accordingly, there are genuine issues of material fact as to whether Neil had any earnings potential.

Defendants contend that Neil was estranged from his family, and they are therefore entitled to summary judgment on the loss of companionship claim. Plaintiff does not dispute that his family did not call, write, or visit Neil while he was incarcerated. See PRSDMF ¶¶ 159, 162, 164. Lee Ambrose testified that Neil wrote to his family while he was in prison, and attended his sister's graduation. Lee Ambrose testified that he offered to visit Neil in prison, but that Neil told him he was getting out soon and would visit him when he was released. Viewing the evidence in the light most favorable to plaintiff, there are genuine issues of material fact that preclude summary judgment on the loss of companionship claim.

Finally, it is undisputed that the Department of Corrections paid for Neil's burial. See PRSDMF ¶ 146. Thus, defendants are entitled to summary judgment on the funeral expenses claim. Accordingly, it is hereby

24

ORDERED that defendants' motion for summary judgment is denied as to Young, Tisland and Weber.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is granted as to the funeral expenses damages claim, but denied as to all other damages claims.

Dated December 12, 2005.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

25